979 F.2d 851
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Sherman M. BOYLAND, Defendant-Appellant.
 No. 91-6069.
 United States Court of Appeals, Sixth Circuit.
 Nov. 12, 1992.
 
 Before DAVID A. NELSON, ALAN E. NORRIS and SUHRHEINRICH, Circuit Judges.
 PER CURIAM:
 
 
 1
 Defendant, Sherman Boyland, appeals his convictions on three counts of intentionally using excessive force while serving as a deputy sheriff, in violation of 18 U.S.C. § 242.[1] Boyland raises several arguments in his appeal to this court. First, he contends that the evidence was insufficient to support the jury's verdict. Second, he maintains that the district court erroneously admitted evidence regarding his use of force on previous occasions as well as prior consistent statements from two government witnesses that he used excessive force on the night in question. Third, Boyland argues that the district court improperly applied the aggravated assault guideline in calculating his offense level.
 
 I.
 
 2
 On June 24, 1989, members of the Shelby County Sheriff's Department, working undercover, were conducting a "reverse sting" operation, in which one officer posed as an unauthorized seller of drugs and other officers arrested those who purchased the drugs. Boyland was a member of this operation. An automobile in which Michael Gates was a passenger approached the officers, and Gates purchased drugs. The car then sped away with other officers in pursuit. When the car reached a railroad crossing, Gates exited and began running down the tracks. Two officers reached Gates but were unable to subdue him. One of the officers forced Gates onto his stomach and sat on his back while both officers attempted to handcuff him. At least four additional deputies, including Boyland, arrived and surrounded Gates.
 
 
 3
 At trial, five officers testified that rather than assisting in the cuffing of Gates, Boyland squatted in front of him, held him by the throat and repeatedly struck him in the face. At least three officers admonished Boyland to stop, but he continued to level punches at Gates' head. When an officer grabbed Boyland in order to pull him away, Boyland elbowed the officer aside and continued to pummel Gates' face. Finally, a deputy grasped Boyland's vest and "just ripped him away." According to several witnesses, Boyland expressed anger at having been pulled away and cautioned them not to interfere when he was subduing a suspect. Gates died en route to a hospital.
 
 
 4
 After Gates' arrest, a car carrying Lahara Rose and Arthur Robinson arrived at the location where the undercover officer was posing as a drug dealer. When Robinson stepped out of the car, officers arrested him. Rose then bolted from the car but was intercepted by Officer Todd Cash, who ordered Rose to his knees. Rose complied. According to Cash's testimony, Boyland appeared and delivered a blow to Rose's head. After Rose fell to the ground, Boyland struck him again. Officer Cash then told Boyland "that's enough," but Boyland continued to strike Rose. Cash testified that he became concerned for Rose's safety and therefore attempted to drag him away from Boyland. Nevertheless, Boyland continued to swing at Rose and did not stop until Cash brought Rose within view of other officers.
 
 
 5
 Following their arrests, Rose and Robinson were standing around the receiving van with their hands cuffed behind their backs. Robinson testified that Boyland suddenly asked him, "What the hell are you looking at?" and punched him in the nose. As Boyland was preparing to strike Robinson again, another officer pushed him away. Robinson began to bleed, felt dazed, and for several hours experienced difficulty breathing. Doctors later determined that Robinson's nose had been broken.
 
 
 6
 A federal grand jury returned an indictment under 18 U.S.C. § 242 against Boyland and two other deputies, charging that these officers used excessive force. Count 1 charged that Boyland struck and choked Gates, with bodily injury and death resulting. Counts 4 and 5 alleged that Boyland struck Rose and Robinson, with bodily injury resulting.
 
 
 7
 At the conclusion of trial, the jury acquitted the other two officers, but convicted Boyland on Counts 4 and 5 (Rose and Robinson). The jury could not agree on whether Boyland caused Gates' death, but did convict him of striking Gates, causing bodily injury. The court sentenced Boyland to seventy-one months' imprisonment, and this appeal followed.
 
 II.
 
 8
 Boyland's first claim of error, that there was insufficient evidence to support his conviction, clearly is without merit. When the evidence is viewed in the light most favorable to the government, there was abundant evidence from which a rational trier of the facts could have found the essential elements of the offenses beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. Adamo, 742 F.2d 927, 932 (6th Cir.1984), cert. denied, 469 U.S. 1193 (1985).
 
 
 9
 Boyland's next contention is that the district court abused its discretion in admitting testimony regarding three prior instances when Boyland used force and warned other officers not to interfere. Trial courts enjoy broad discretion in deciding whether evidence of prior acts is admissible against a defendant in a criminal case pursuant to Fed.R.Evid. 404(b). United States v. Ebens, 800 F.2d 1422, 1432-33 (6th Cir.1986) (civil rights prosecution under 18 U.S.C. § 245(b)).
 
 
 10
 Fed.R.Evid. 404(b) generally prohibits the introduction of evidence of other crimes, wrongs or acts to show a person acted in conformity with such behavior on a given occasion. Such evidence "may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed.R.Evid. 404(b). The rule requires the court to consider "whether the evidence is relevant to an issue for which it is admissible under the rule, and whether the probative value of the evidence is substantially outweighed by any undue prejudice." United States v. Rodriguez, 882 F.2d 1059, 1064 (6th Cir.1989), cert. denied, 493 U.S. 1084 (1990).
 
 
 11
 Because a defendant must have a specific intent to deprive a person of a federal right in order to be convicted of violating 18 U.S.C. § 242, Screws v. United States, 325 U.S. 91 (1945) (predecessor statute), proof tending to show a defendant's intent is relevant. The government introduced evidence of Boyland's past use of force when apprehending suspects and his warning of colleagues not to intervene in the future when he used such force, as tending to show that Boyland intended on the occasions under consideration in this appeal to use excessive force and that its use was not the product of mistake or accident.
 
 
 12
 However, in order to be relevant, the past behavior must be substantially similar to the conduct underlying the offense with which the defendant is now charged. United States v. Largent, 545 F.2d 1039, 1043 (6th Cir.1976), cert. denied, 429 U.S. 1098 (1977). Under the circumstances of this case, that means that the force employed by Boyland on those prior occasions must have been excessive. We are troubled by the government's failure to establish that the force used in those earlier three incidents was in fact excessive; the government appears just to have assumed that it was.
 
 
 13
 The government asserts that Boyland could have put on evidence to demonstrate that the prior conduct was not excessive, but that of course misstates the burden of the party proffering the evidence.
 
 
 14
 We need not decide whether the court erred in regarding the prior acts as similar, since any error would be harmless in view of the overwhelming evidence that Boyland was aware that bodily injury would be the probable result of his conduct and therefore intended that bodily injury would be the consequence of his conduct. Extensive testimony graphically depicted the unrelenting nature of the brutal beatings he administered to helpless victims. In view of this evidence, a reasonable jury could only conclude that Boyland intended to use force in excess of that which was reasonably necessary. Accordingly, even if the other acts evidence were erroneously admitted, that evidence could not have prejudiced Boyland's cause.
 
 
 15
 Boyland also challenges the district court's admission of statements made by two officers shortly after the incident to the effect that Boyland used excessive force on Gates and Rose. Those remarks were consistent with the officers' testimony at trial. They were admissible under Fed.R.Evid. 801(d)(1)(B), which provides that "[a] statement is not hearsay if.... [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is ... consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive." In his opening statement, Boyland's counsel told the jury it would hear other officers testify that they originally lied about the incident but were now telling the truth and suggested that officers changed their stories in order to avoid prosecution themselves. The trial judge therefore was warranted in concluding that Boyland's defense at trial included the charge that the officers' trial testimony was a recent fabrication in an effort to deflect potential federal prosecution from themselves to Boyland.
 
 
 16
 Finally, Boyland disputes his sentencing on the count relating to his beating of Robinson, arguing that the district court improperly found aggravated assault to be the underlying offense for the charge under 18 U.S.C. § 242.[2] Application of the guidelines to an undisputed set of facts is subject to de novo review. United States v. Sivils, 960 F.2d 587, 596 (6th Cir.), cert. denied, 113 S.Ct. 130 (S.Ct.1992).
 
 
 17
 Boyland argues that his treatment of Robinson could not amount to an aggravated assault since the victim's medical care cost less than $200. However, we agree with the district court's conclusion that defendant's conduct in breaking Robinson's nose, together with the pain, bleeding, and breathing problems Robinson suffered, satisfies the definitional requirements of the applicable Sentencing Guidelines. U.S.S.G. §§ 2A2.2 (providing four-level increase for aggravated assault that causes "serious bodily injury"), 1B1.1, comment. (n. 1(j)) (defining "serious bodily injury").
 
 III.
 
 18
 Accordingly, we affirm the judgments of conviction and sentencing.
 
 
 
 [1]
 This statute provides:
 Whoever, under color of any law, ... willfully subjects any inhabitant of any State, Territory, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such inhabitant being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined not more than $1000 or imprisoned not more than one year, or both; and if bodily injury results shall be fined under this title or imprisoned not more than ten years, or both; and if death results shall be subject to imprisonment for any term of years or for life.
 18 U.S.C. § 242. The use by a police officer of excessive force to apprehend a citizen may amount to a deprivation of a right secured by the Constitution, since the Fourth Amendment prohibits unreasonable seizures of the person. See Graham v. Connor, 490 U.S. 386 (1989).
 
 
 [2]
 Section 2H1.4 of the Sentencing Guidelines provides that the offense level for a violation of 18 U.S.C. § 242 is 10 or 6 plus the offense level of the underlying offense, whichever is greater. United States Sentencing Commission, Sentencing Guidelines § 2H1.4 (Nov. 1990)